IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RAIMUNDO AMBROS CASTRO,

          Plaintiff,

   v.

NANCY BERRYHILL,
Commissioner of Social Security,

             Defendant.

Case No.: 3:16-CV-00726-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

     Raimundo Castro ("plaintiff") seeks judicial review of a final decision by the Commissioner of

Social Security ("Commissioner") denying his applications for Title II Disability Insurance Benefits ("DIB")

and Title XVI Supplemental Security Income ("SSI") under the Social Security Act ("Act").[1] All parties

---

[1] Plaintiff filed two opening briefs, ECF Nos. 12 and 13. After review, this court finds the
substantive arguments appear identical. In this Opinion and Order the court will refer to ECF No. 13,
Plaintiff's Memorandum in Support of the Petition for Review filed on November 10, 2016, as "Pl.'s

have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). Based on a careful review of the record, the Commissioner's decision is affirmed in part, reversed in part, and remanded for further administrative proceedings.

### Procedural Background

On October 18, 2012, plaintiff applied for DIB, and on November 16, 2012, plaintiff applied for SSI. (Tr. 200-15.) In both applications plaintiff alleges disability as of August 1, 2012. (Tr. 200, 207.) The Commissioner denied his applications initially and upon reconsideration. (Tr. 74-87, 92-127.) On October 4, 2013, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and an administrative hearing was held on June 24, 2014. (Tr. 39-65, 154-55.) After the hearing, the ALJ issued an unfavorable decision on September 15, 2014, finding plaintiff not disabled. (Tr. 19-32.) The Appeals Council denied plaintiff's subsequent request for review, making the ALJ's decision final. (Tr. 1-4.) This appeal followed. Plaintiff argues that the ALJ erred at step two by: (1) failing to provide a clear and convincing reason to reject his subjective symptom testimony; and (2) improperly evaluating the medical opinions of Dr. Drake Duane, Dr. Shannon Tromp, Dr. Aaron Bowen, non-examining state agency psychologists, and Mr. Thomas Kruzel.

### Factual Background

Born on January 23, 1964, plaintiff was 48 years old on the alleged onset date of disability and 50 years old at the time of the hearing. (Tr. 44.) He completed his GED and has past work as a route delivery driver, a motor coach driver, an alarm installer and troubleshooter, and a mechanical

---

Opening Br."

repairer/worker. (Tr. 61-62, 254.) Plaintiff alleges disability due to depression, attention deficit disorder ("ADD"), and osteoarthritis. (Tr. 74, 81, 92, 110.)

\ \ \ \ \

### Standard of Review

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the claimant does not have a medically determinable, severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### The ALJ's Findings

At step one of the five-step process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 21.) At step two, the ALJ determined that plaintiff had the following medical determinable impairments: "hypertension, hypercholesterolemia, diabetes, right shoulder tendinitis, obesity, speech fluency disorder-stutter, mood disorder and attention deficit disorder." (*Id.*) At the same step the ALJ found that plaintiff "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments." (*Id.*) Based on this finding, the ALJ determined that

Page 5 - OPINION AND ORDER

plaintiff was not disabled within the meaning of the Act. (Tr. 29.) The ALJ did not proceed to step three.

### *Discussion*

Plaintiff argues that the ALJ erred at step two by: (1) failing to provide a clear and convincing reason to reject his subjective symptom testimony, and (2) failing to reasonably evaluate the medical opinions in the record. (Pl.'s Opening Br. 12-26.)[2]

I.      Plaintiff's Symptom Testimony

Plaintiff argues the ALJ failed to provide a clear and convincing reason to reject his symptom testimony. (Pl.'s Opening Br. 22-26, Pl.'s Reply Br. 2-3.)

If "there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Examples of clear and convincing reasons include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies either in the claimant's testimony or between his

---

[2] As the Commissioner notes, although plaintiff alleges disability due to physical and mental impairments, he challenges only the ALJ's findings regarding his mental impairments on appeal. Def. Br. 5. Because plaintiff makes no argument concerning the severity of his physical impairments, the court limits its discussion to the mental impairments at issue.

testimony and his conduct, daily activities inconsistent with the alleged symptoms, a sparse work history, testimony that is vague or less than candid, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of. *Tommasetti*, 533 F.3d at 1040; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ found Dr. Bowen's "diagnosis of malingering to be persuasive evidence of the claimant's lack of credibility regarding his allegations." (Tr. 30.) Evidence of malingering is sufficient to support a negative credibility finding. *See Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040-41 (9th Cir. 2003) (an ALJ can reject plaintiff's testimony either through evidence of malingering or expressing clear and convincing reasons for doing so). Plaintiff argues the ALJ "did not accept this finding of malingering," and was still required to give a clear and convincing reason for discrediting his symptom testimony. (Pl.'s Reply Br. 2.) The court disagrees, finding the ALJ did accept Dr. Bowen's finding of malingering. However, even if the ALJ failed to accept Dr. Bowen's finding, this court finds no error because the ALJ provided numerous clear and convincing reasons for discrediting plaintiff's subjective symptom testimony.

Here, the ALJ found plaintiff's statements concerning the "intensity, persistence and limiting effects of" plaintiff's symptoms "not entirely credible" because: (1) plaintiff gave inconsistent statements concerning his alleged impairments; (2) plaintiff's impairments were stable on medication; (3) there was a lack of medical evidence to support plaintiff's allegations; (4) plaintiff's activities of daily living were inconsistent with his alleged physical and mental symptoms; (5) plaintiff owed back taxes and had a lien placed on his checking account; (6) plaintiff left his job for reasons unrelated to his disability, and (7) plaintiff had an "unpersuasive appearance and demeanor" at the ALJ hearing. (Tr. 23-32.)

## A. Inconsistent Statements Concerning Alleged Impairments

First, the ALJ discredited plaintiff's symptom testimony because she found he gave "inconsistent statements regarding his stutter," noting that despite plaintiff's claims the stutter "does not limit him." (Tr. 23.) Plaintiff's inconsistent statements are a clear and convincing reason for rejecting his subjective symptom testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (inconsistencies between a plaintiff's symptom testimony and the medical record can serve as a clear and convincing reason to discredit a plaintiff's symptom testimony). The record supports the ALJ's findings, because some medical providers noted plaintiff's stutter caused difficulties with work, while others noted no stutter at all. (*See* Tr. 408, 445, 479, 486, 493-94, 514, 581, 599-600, 610-11, 637, 639, 646, 665, 672, 678, 684.) This inconsistency is a clear and convincing reason for discrediting plaintiff's symptom testimony.

## B. Impairments Stable on Medication

Next, the ALJ discredited plaintiff's subjective symptom testimony because she found plaintiff's mental impairments were "stable on medications." (Tr. 23.) The ALJ referenced progress notes from September 19, 2012 where Dr. Drake Duane wrote plaintiff's oral verbal fluency was improved. (Tr. 25.) "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted). Indeed, the medical record reflects plaintiff showed improvement in his speech dsyfluency while taking medication. (Tr. 474.) Although Dr. Duane did note on September 19, 2012, that plaintiff's ADD was only "partially repaired," and medication was "not effective enough to improve fluency or his behavioral management," he later found, on April 7, 2014, that plaintiff's verbal fluency had improved again with medication. (Tr. 474, 665.) Additionally, plaintiff testified at the June 24, 2014 hearing that he would not be able to function without

his medication. (Tr. 50.) The court finds this evidence supports the ALJ's finding that plaintiff's mental impairments were controlled by medication, and that this is a second clear and convincing reason for rejecting plaintiff's subjective symptom testimony.

### C.    Lack of Medical Evidence

Next, the ALJ essentially found there was a lack of medical evidence to support plaintiff's alleged mental impairments, specifically noting that plaintiff "received infrequent treatment since 2002" for his mental health symptom complaints and had "no history of psychiatric hospitalization" for his mental health impairments. (Tr. 23.) Additionally, she noted that although plaintiff described a "history of seizure-like activities" he was never diagnosed or treated for a "formal seizure disorder." (*Id.*) "Although lack of medical evidence cannot form the sole basis for discrediting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, an independent review of the record supports at least one of the ALJ's findings. Although plaintiff received only infrequent treatment for his mental health symptoms since 2002, a January 2015 letter from Dr. Duane explained the inconsistency of treatment was "part of the current regulations for managing patients receiving medications for attention disorder in the state of Arizona, and is commonplace throughout the United States." (Tr. 513-14, 567-68, 597-616, 661-73, 706.) "[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)). The court rejects this reason for discrediting plaintiff's testimony.

The record does show, however, that plaintiff had no psychiatric hospitalization or diagnosis of a

formal seizure disorder. Despite the previously discussed error in the ALJ's findings, the error is harmless because the ALJ provided another clear and convincing reasons to discredit plaintiff's symptom testimony. *See Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004) (the ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld). Thus, there is no error.

      D.     *Activities of Daily Living*

Next, the ALJ discredited plaintiff because she found his activities of daily living were inconsistent with his allegations of disability. (Tr. 23.) "In reaching a credibility determination, an ALJ may weigh consistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Bray v. Astrue*, 554 F.3d 1219, 1227 (9th Cir. 2009). The ALJ found plaintiff was relatively active in his activities of daily living, noting his ability to volunteer up to ten hours a day with St. Vincent de Paul, living alone, driving independently, and "assist[ing] an elderly friend with medical appointment transportation and other needs." (Tr. 23.) The ALJ also noted that plaintiff's reports to Dr. Austin included that he was independent in "managing his paperwork, and paying bills," was "spending time at the library researching information, and stated he was engaged in a legal complaint against Walt Disney World for wrongful termination." (Tr. 24.) Plaintiff also reported frequently using the Internet, reading, talking with friends over the phone, and attending church services, which the ALJ found was "inconsistent with his alleged limitations in memory and concentration." (*Id.*) Finally, the ALJ found plaintiff reported to Dr. Tromp that he was "reading and trying to learn as much as possible," which the ALJ found was "inconsistent with his reported difficulties concentrating." (Tr. 26.)

The ALJ's findings regarding plaintiff's activities of daily living are fully supported by the record.

Plaintiff lived independently, assisted an elderly friend, attended church, read and researched at the library, volunteered at St. Vincent de Paul, and was filing a lawsuit against Walt Disney World. (*See* Tr. 264, 268, 308-10, 324-28, 333-356, 370, 374-75, 378, 385-88, 394-95, 444, 447, 464, 475, 479, 482, 651, 662, 665, 676-77.) The ALJ reasonably found plaintiff's activities of daily living were inconsistent with his alleged disability allegation, and thus was another clear and convincing reason for discrediting plaintiff's symptom testimony.

E.    *Plaintiff's Back Taxes and Lien Placed on Checking Account*

Next, the ALJ found plaintiff's reports that he owed back taxes to the state and had a lien placed on his checking account were "matters which do not bolster his credibility." (Tr. 26.) The court rejects this reason for discrediting plaintiff's symptom testimony. *See Altorfer v. Colvin*, No. 3:14-cv-01933-HZ, 2015 WL 9255544, at *8 (D. Or. Dec. 18, 2015); *Ratto v. Sec'y*, 839 F. Supp. 1415, 1428-29 (D. Or. 1993) (plaintiff's motive of pecuniary gain is an improper basis on which to determine that subjective complaints are not credible.)

F.    *Leaving His Job for Reasons Unrelated to Disability*

Next, the ALJ found plaintiff stopped working for reasons unrelated to his disability, noting that plaintiff "told Dr. Tromp that he last worked in September 2012, and that job ended when that company went out of business." (Tr. 27.) The ALJ found this showed plaintiff "stopped working for non-medical reasons, and that he would have been able to continue working despite his alleged impairments and associated restrictions." (*Id.*) *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (claimant's pain complaints were not credible because he reported at the administrative hearing, and also to his doctors, that he left his job because he was laid off, not because he was injured.) The court finds the ALJ's

Page 11 - OPINION AND ORDER

findings were supported by the record and this is another clear and convincing reason for discrediting plaintiff's subjective symptom testimony.

### G.    *Unpersuasive Appearance and Demeanor at ALJ Hearing*

Finally, the ALJ discredited plaintiff's symptom testimony based on the plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing." (Tr. 32.) The ALJ wrote that plaintiff's "stutter was intermittent, minimal and mild, at best," but did note that "this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations." (*Id.*) The practice of "sit and squirm jurisprudence" is generally disfavored, and "may not form the sole basis for discrediting a claimant's testimony." *See Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985); *Orn*, 495 F.3d at 639. However, the "inclusion of the ALJ's personal observations does not render the decision improper." *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). The ALJ's personal observations are valid when the claimant manifests symptoms inconsistent with the medical evidence of his testimony. *Id.*

The ALJ's personal observations of plaintiff are valid because they show symptoms inconsistent with more severe stuttering described by plaintiff. Therefore, the court finds this to be a clear and convincing reason to discredit plaintiff.

Although the court does not find all of the reasons offered by the ALJ to be clear and convincing reasons for rejecting plaintiff's symptom testimony, these errors are harmless because the ALJ provided at least one clear and convincing reasons to discredit plaintiff's symptom testimony. *See Batson*, 359 F.3d at 1197 (the ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld.) In sum, the ALJ provided a clear and convincing reason for

Page 12 - OPINION AND ORDER

discrediting plaintiff's symptom testimony concerning the severity of his symptoms. There is no error.

II.    Medical Opinion Evidence

Next, plaintiff argues the ALJ erred when evaluating the medical opinion evidence of Dr. Drake Duane, Dr. Shannon Tromp, Dr. Aaron Bowen, the non-examining state agency psychologists, and Mr. Thomas Kruzel. (Pl.'s Br. 12-22.) Specifically, plaintiff argues that the ALJ erred by: (1) discrediting the medical opinions of Dr. Duane, Dr. Tromp, and Mr. Kruzel, and (2) giving "significant weight" to the medical opinions of Dr. Bowen and the non-examining state agency psychologists. (*Id.*) The court addresses each of plaintiff's arguments in turn.

    A.    *Acceptable Medical Opinions - Treating, Examining, and Non-Examining Physicians*

        1.    Dr. Drake Duane, treating neuropsychiatrist

First, plaintiff argues the ALJ erred by only giving "little weight" to the medical opinions of treating neuropsychiatrist, Dr. Drake Duane. (Pl.'s Opening Br. 14.)

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle*, 533 F.3d at 1164. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

Dr. Duane began treating plaintiff in 2002 for attention deficit disorder ("ADD"), reactive

Page 13 - OPINION AND ORDER

depression, and developmental and language dysfluency. (Tr. 598, 600.) Plaintiff continued to receive treatment from Dr. Duane over the years, typically having appointments every six to twelve months. (Tr. 567-68, 597-616, 661-73, 705-07.) On September 19, 2012, Dr. Duane noted that plaintiff had an improved Letter Cancellation score with only "1 error in the left hemi space," and a low GAF score of 60, which was based on plaintiff's "recurrent depression." (Tr. 474.) Overall, he opined that plaintiff "is now impaired sufficiently that he should be considered disabled to qualify for benefits under Social Security Disability." (*Id.*) On October 4, 2012, Dr. Duane wrote a letter on plaintiff's behalf, noting his low GAF score, high Hamilton Depression Rating Scale score, and opined that plaintiff "is construed as disabled for employment." (Tr. 568.)

On May 13, 2013, Dr. Duane completed a Psychiatric/Psychological Impairment Questionnaire. (Tr. 609-16.) He diagnosed plaintiff with ADD, developmental and language disorder, and reactive depression. (Tr. 609.) He noted plaintiff had poor memory, sleep disturbance, mood disturbance, anhedonia or pervasive loss of interest, difficulty thinking or concentrating, decreased energy, and dysfluent speech. (Tr. 610.) He assessed marked limitations in plaintiff's ability to maintain attention and concentration for long periods of time, mild limitations in his ability to understand and remember one or two step instructions, moderate limitations in his ability to carry out detailed instructions, and moderate limitations in his ability to interact appropriately with the public. (Tr. 612-13.) Dr. Duane overall found plaintiff would be absent from work about two to three times per month. (Tr. 616.)

On April 7, 2014, Dr. Duane's treatment notes stated plaintiff was volunteering at St. Vincent de Paul. (Tr. 665.) He assessed a GAF score of 50 and a Hamilton Depression Scale score of 23. (*Id.*) He also found plaintiff had a high error rate on the Letter Cancellation test and was advised to continue on

his medications, which included Ritalin LA and Piracetam. (*Id.*) On May 1, 2014, Dr. Duane wrote another letter on plaintiff's behalf noting that he had seen plaintiff every six-to-twelve months since July 2002, and found he "was not responding to treatment as well as originally predicted." (Tr. 672.) He opined plaintiff has "positive clinical findings of sleep and mood disturbance, poor memory, decreased energy, anhedonia, difficulty thinking or concentrating, oral language interruptions, and despondency," and "[h]is primary symptoms include poor concentration, impaired speech fluency, and depression." (*Id.*) Dr. Duane opined that plaintiff was "markedly limited in his ability to maintain attention and concentration for extended periods of time, due to his attention deficit diagnosis," would have difficulties related to his verbal dysfluency, and his "pain, fatigue, and other symptoms" would "regularly interfere with his attention and concentration." (Tr. 672-73.)

Here, the ALJ gave "little weight" to Dr. Duane's opinions finding "the greater objective record fails to support the finding that the claimant has moderate mental limitations, and his assertion that the claimant is disabled addresses an issue reserved to the Commissioner." (Tr. 28.) Next, the ALJ noted that Dr. Duane saw plaintiff every six to twelve months and the "infrequency of his direct observation, care and treatment" of plaintiff made his opinion "less reliable." (*Id.*) Finally, the ALJ wrote Dr. Duane "provided no specific work limitations and merely checked boxes on the form," and that "[h]is opinion otherwise provides no explanation for his assessed limitations." (Tr. 29.)

The ALJ was required to give a specific and legitimate reason for discrediting Dr. Duane's opinion because it was inconsistent with the opinion of Dr. Aaron Bowen, who found plaintiff was malingering. (Tr. 640-53.) *See Bayliss*, 427 F.3d at 1216 (the contradicted opinion of a treating or examining physician can be rejected with specific and legitimate reasons that are supported by substantial evidence). First, the ALJ

Page 15 - OPINION AND ORDER

reasonably rejected Dr. Duane's assertion that plaintiff was "disabled" noting that this issue was "reserved to the Commissioner." (Tr. 28.) "The law reserves the disability determination to the Commissioner." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). However, the ALJ must address the remaining parts of a doctor's opinion and provide a legally sufficient reason for discrediting the doctor's medical opinion. *See Schlegal v. Colvin*, 1:13-cv-00517-KI, 2014 WL 1386349, at *4 (D. Or. April 9, 2014).

This court finds ths ALJ erred in discrediting the remaining portion of Dr. Duane's medical opinion by failing to provide specific and legitimate reasons supported by substantial evidence. The ALJ noted "the greater objective record fails to support the finding that claimant has moderate mental limitations," but failed to discuss what specific medical evidence she was relying on when making this conclusion. (Tr. 30.) Because the court cannot infer what specific objective evidence the ALJ was referencing this court finds the ALJ erred.

Next, this court finds Dr. Duane's infrequent treatment was not a specific and legitimate reason for discrediting his medical opinion. On January 19, 2015, Dr. Duane submitted a letter explaining the infrequency of his treatment was based upon "current regulations for managing patients receiving medications for attention disorder." (Tr. 706.) Although length of treatment and the frequency of examination are evaluated when weighing the medical opinions of treating physicians, Dr. Duane's infrequent treatment of plaintiff was clearly explained; therefore, the court finds the infrequency of Dr. Duane's treatment is not a specific and legitimate reason for discrediting his medical opinion. 20 C.F.R. §§ 404.1527(c)(2)(i-ii), 416. 927(c)(2)(i-ii).

Finally, the ALJ's finding that Dr. Duane "merely checked boxes on the form" and "provides no explanation for his assessed limitations" is not supported by the evidence. (Tr. 29.) An ALJ may

permissibly reject "check-off reports" when they "do not contain any explanation of the bases of their conclusions." *Crane v. Shalala*, 76 F.3d 251 (9th Cir. 1996). However, if a check-off questionnaire is "based on significant experience . . . and supported by numerous records[, it is] entitled to weight than an otherwise unsupported and unexplained check-box form would not merit." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). This court finds the ALJ's conclusion that Dr. Duane provided no explanation for his assessed limitations of plaintiff in the psychiatric and psychological impairment form he completed on May 13, 2013 is not persuasive. Dr. Duane treated plaintiff continuously since 2002 and medical evidence of record shows he performed consistent testing of plaintiff to evaluate his mental abilities. (Tr. 567-68, 597-616, 661-73, 705-07.)

Overall, the court finds the ALJ reasonably discredited Dr. Duane's opinion that plaintiff was "disabled," but failed to provide a specific and legitimate reason for rejecting the remainder for Dr. Duane's medical opinion. This is harmful error.

B.   *Dr. Shannon Tromp, Examining Psychologist*

Next, plaintiff argues the ALJ failed to provide a legally sufficient reason to reject the medical opinion of examining psychologist, Dr. Shannon Tromp. (Pl.'s Opening Br. 21-22.)

On May 22, 2014, Dr. Tromp performed a clinical interview of plaintiff and completed a Mental Impairment Questionnaire. (Tr. 675-87.) During the clinical interview Dr. Tromp noted that plaintiff had "a frequent stutter" but was "fully comprehensible," and had "adequate" attention and concentration. (Tr. 678.) Dr. Tromp also administered a Mini Mental Status Exam ("MMSE"), upon which plaintiff scored a 30/30. (*Id.*) Overall, she wrote that she "did not feel that [plaintiff] is malingering," but "[t]he fact that he is trying hard to prove [his disability] and is not subtle about it actually argues more for impaired social

judgment than malingering in this case." (Tr. 680.) She did note that plaintiff exhibited depressive symptoms, could care for himself independently, "was caring for a friend regularly," and "volunteers regularly." (Tr. 681.) It was her medical opinion that plaintiff would "have trouble with social communication and judgment, slow processing speed and poor stress tolerance." (*Id.*) She found he would be "able to manage simple and detailed tasks," but would "have trouble with complex tasks and problem solving." (*Id.*)

On the Mental Impairment Questionnaire Dr. Tromp diagnosed plaintiff with ADD-inattentive, mood disorder, childhood onset speech fluency disorder, and alcohol and amphetamine abuse. (Tr. 683.) She described plaintiff's "poor stress tolerance" and "difficulty with social judgment and communication," overall writing that "stress exacerbates poor communication, social comprehension, interpersonal conflict, anxiety and paranoia result." (Tr. 685.) She found plaintiff would have moderate-to-marked limitations in maintaining attention and concentration for extended periods, and moderate limitations in understanding and remembering detailed instructions and interacting appropriately with the public. (Tr. 686.) Finally, she found plaintiff would likely miss more than three days per month if exposed to high stress situations, but would miss only one day per month if his stress was low. (Tr. 687.)

Here, the ALJ considered Dr. Tromp's medical opinion, but gave it "little weight." (Tr. 29.) When discrediting Dr. Tromp's opinion the ALJ found "she ha[d] no treating relationship with the [plaintiff] and her examination and report were paid for by counsel in order to generate evidence, not to provide treatment." (*Id.*) Additionally, the ALJ found Dr. Tromp's opinion was "highly reliant on the [plaintiff]'s subjective complaints, which are not fully credible." (*Id.*)

The ALJ was required to give a specific and legitimate reason for discrediting Dr. Tromp's opinion

because it was inconsistent with the opinion of Dr. Bowen. (Tr. 640-53.) *See Bayliss*, 427 F.3d at 1216.

First, the court finds the ALJ's finding that plaintiff's counsel hired Dr. Tromp to evaluate him is not a specific and legitimate reason for rejecting her medical opinion. *See Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) ("[T]he mere fact that a medical report is provided at the request of a claimant's counsel, or more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report.") However, the ALJ provided a specific and legitimate reason for discrediting Dr. Tromp's medical opinion when she found Dr. Tromp's medical opinion was "highly reliant on the [plaintiff]'s subjective complaints." (Tr. 29.) *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (a specific and legitimate reason for rejecting a treating physician's opinion is that the opinion is premised on a claimant's subjective complaints, which the ALJ had properly discredited.) Because the ALJ provided at least one specific and legitimate reason for discrediting the medical opinion of Dr. Tromp, this court finds no error.

C.    *Dr. Aaron Bowen, Examining Psychologist*

Next, plaintiff argues the ALJ erred by giving "significant weight" to the medical opinion of examining psychologist, Dr. Aaron Bowen. (Pl.'s Opening Br. 17-18.)

"[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041-42 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)). When "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict . . . ." *Chaudry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)).

Dr. Bowen performed a psychological evaluation of plaintiff on July 20, 2013 and diagnosed

plaintiff with malingering. (Tr. 640-53.) Despite plaintiff's complaints of ADHD and a stutter, Dr. Bowen noted that he did not observe any stutter upon examination. (Tr. 640, 646.) Overall, Dr. Bowen found plaintiff was "feigning his mental illness-he reported all kinds of issues, but presented as completely asymptomatic." (Tr. 641.)

The ALJ gave "significant weight" to the medical opinion of Dr. Bowen that plaintiff "had no mental limitations." (Tr. 30.) The ALJ "considered [plaintiff]'s complaints regarding Dr. Bowen['s] examination and manner," but found "the narrative report appears to be very detailed" and plaintiff's "mini mental status examination of 30/30 tends to show that contrary to his allegations, he has no apparent cognitive deficits." (*Id.*) Finally, the ALJ found Dr. Bowen's opinion was "consistent with the [plaintiff]'s activities of daily living, which show greater activities than alleged." (*Id.*) Although plaintiff disagrees with the ALJ's interpretation of the medical record, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198. The ALJ's findings are reasonable and supported by substantial evidence, so there is no error.

D. *Non-Examining State Agency Psychologists*

Next, plaintiff argues the ALJ erred by giving significant weight to the medical opinion of the non-examining psychologists. (Pl.'s Opening Br. 18-19.) Specifically, plaintiff argues the "opinions from non-examining physicians are not, standing alone, substantial evidence that justifies the rejection of opinions of treating sources," and that the non-examining psychologist "reviewed [plaintiff]'s file on July 23, 2013 before any of the treatment records from the relevant period at issue from Dr. Duane were entered into the record. (*Id.*)

"The opinion of a non-examining medical advisor cannot by itself constitute substantial evidence

that justifies the rejection of the opinion of an examining or treating physician." *Morgan*, 169 F.3d at 602 (citations omitted). However, the opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Id.* at 600.

Here, the ALJ gave "greater weight" to the opinions of the state agency reviewing physicians regarding plaintiff's residual functional capacity noting that "their opinions were not inconsistent with the greater objective record, particularly regarding their finding that the claimant does not have an impairment or combination of impairments that significantly limit his physical and mental ability to do basic work activities." (Tr. 30.) The court finds the ALJ's reasons for accepting the opinions of the non-examining physicians was reasonable. Here, the ALJ did not accept the non-examining physicians' opinions as the only substantial evidence for rejecting the other medical opinions of treating and examining physicians, but considered their opinions and the opinions of numerous other treating and examining physicians. (*See* Tr. 23-30.) The ALJ's evaluation of this medical evidence was reasonable. There is no error.

  B.    *Non Acceptable Medical Sources*

    1.    Dr. Thomas Kruzel, treating naturopath

Finally, plaintiff argues the ALJ erred by "failing to properly consider the opinions from treating naturopath Dr. Kruzel." (Pl.'s Opening Br. 20.)

Evidence from "other sources," including "nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists . . . cannot establish the existence of a medically-determinable impairment" under the Act. SSR 06-03p, at *2. However, opinions from these "not acceptable" medical sources "are important and should be evaluated on key issues such as

impairment severity and functional effects. . . ." SSR 06-03p, at \*3. Before rejecting evidence from "other sources," the ALJ must give germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Plaintiff saw naturopath, Dr. Kruzel, on February 21, 2013, for complaints of fatigue and attention deficit disorder. (Tr. 618.) On March 27, 2013, Dr. Kruzel completed a Multiple Impairment Questionnaire that contained his diagnosis that plaintiff suffered from fatigue, diabetes, hypertension, and attention deficit disorder, and also documented plaintiff's complaints of low back pain. (Tr. 620-27.) Mr. Kruzel opined that plaintiff's fatigue was an "8-9" or "moderately severe to severe," his symptoms would increase if placed in a competitive work environment, and his "pain, fatigue, or other symptoms" would frequently interfere with his attention and concentration. (Tr. 622, 624-25.) Finally, he wrote that plaintiff's impairments were likely to produce "good days" and "bad days," and that plaintiff would likely be absent from work more than three times a month because of his impairments or treatment. (Tr. 626.) On March 28, 2013, Dr. Kruzel wrote a letter in which he provided his overall assessment that plaintiff "is incapable of performing any full time repetitive work." (Tr. 618.)

Here, the ALJ "considered Dr. Kruzel's opinion that the claimant is 'incapable of performing any full time repetitive work,'" but overall determined that Dr. Kruzel's statements that plaintiff was "disabled," "unable to work," "can or cannot perform a past job," or "meets a Listing" were "not medical opinions but . . . administrative findings dispositive of a case" and were "reserved to the Commissioner." (Tr. 30.) The ALJ further noted that "[o]pinions on issues reserved to the Commissioner can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence (Social Security Ruling 96-5p)." (*Id.*)

After evaluating the remainder of Dr. Kruzel's statements, the ALJ dismissed Dr. Kruzel's opinion because she found his opinion was "not consistent with the evidence as a whole." (*Id.*) Additionally, the ALJ discredited Dr. Kruzel's statements because "naturopathic doctors are not acceptable medical sources" and he was "not a long term treater" of plaintiff. (*Id.*)

The ALJ reasonably discredited Dr. Kruzel's statements that plaintiff was "disabled" and "unable to work," properly finding that such conclusions are "reserved to the Commissioner." (*Id.*) *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (conclusory statements that a claimant is "disabled" are not medical opinions under the Act). But the ALJ still must provide a germane reason for rejecting the remaining portion of Dr. Kruzel's opinion. Here, the ALJ found Dr. Kruzel's opinion was "not consistent with the evidence as a whole" (tr. 30), but the court finds this is not a germane reason for rejecting Dr. Kruzel's medical opinions because the ALJ failed to explain the specific evidence she relied upon in making this finding. The ALJ erred by rejecting Dr. Kruzel's opinion because he was not an acceptable medical source or a long-term treater. Although the opinion evidence from a non-acceptable medical source cannot establish the existence of a medically-determinable impairment under the Act, these opinions "are important and should be evaluated on key issues such as impairment severity and functional effect . . . ." SSR 06-03p, at *3. Merely finding Dr. Kruzel to not be an acceptable medical source is not a germane reason to discredit his opinion. Additionally, that Dr. Kruzel is not a long-term treater of plaintiff was not a germane reason for rejecting his opinion, but a factor that the ALJ must consider when "weighing medical opinions" from a non-treating source. *See* SSR 06-03p at *3. The ALJ was required to evaluate Dr. Kruzel's opinion and provide a germane reason for rejecting it, which the ALJ failed to do.

***Remand***

The decision "whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court." *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Generally, "[w]hen an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292. Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020 (citations omitted).

Here, the ALJ erred when evaluating the medical opinion evidence of Dr. Duane and Dr. Kruzel. The ALJ's decision therefore is not supported by substantial evidence. When considering the record as a whole, this court finds remand for further proceedings appropriate because outstanding issues remain for resolution before a determination of disability can be made. Specifically, even crediting the medical opinions of Dr. Duane and Dr. Kruzel, the proceeding below left unclear the severity of plaintiff's mental impairments and whether he will be able to perform other work in the national economy with his mental impairments. On remand, the ALJ should consider the erroneously rejected medical evidence from Dr. Duane and Dr. Kruzel and continue the sequential evaluation.

*Conclusion*

Based on the foregoing discussion, the Commissioner's decision is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 10th day of July 2017.

JOHN V. ACOSTA
United States Magistrate Judge